Eric R. Henkel
Rufus I. Peace
CHRISTIAN, SAMSON & BASKETT, PLLC
310 W. Spruce Street
Missoula, Montana 59802
Tel:   (406) 721-7772
Email: eric@csblawoffice.com
           rpeace@csblawoffice.com

Dylan M. McFarland
KNIGHT NICASTRO MACKAY, LLC
283 West Front Street, Suite 203
Missoula, Montana 59802
Tel:   (406) 206-5747
Email: mcfarland@knightnicastro.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# MISSOULA DIVISION

| | |
|---|---|
| ROMY BENTLE, individually and as parent and guardian of A.R.B., a minor child, and ERIC BENTLE, individually and as parent and guardian of A.R.B., a minor child,<br><br>Plaintiffs,<br><br>vs.<br><br>DETROIT BEHAVIORAL INSTITUTE, LLC, a Massachusetts limited liability company; and ACADIA HEALTHCARE COMPANY, INC., a Delaware corporation,<br><br>Defendants. | Cause No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

1

COME NOW, Plaintiffs Romy Bentle and Eric Bentle, individually and as parents and guardians of A.R.B., by and through their counsel of record, and for their Complaint and Demand for Jury Trial against Defendant Detroit Behavioral Institute, LLC and Defendant Acadia Healthcare Company, Inc. (collectively "Defendants"), allege and state as follows:

## PARTIES

1. Plaintiff Romy Bentle ("Romy") and Plaintiff Eric Bentle ("Eric") are the legal guardians of A.R.B. ("ARB"). ARB is a severely disabled minor child. Romy is ARB's mother and Eric is ARB's father. Romy and Eric bring this action to assert claims on behalf of their daughter, ARB. Romy and Eric also bring this action to assert claims in their individual capacities. Romy, Eric and ARB are collectively referred to herein as "Plaintiffs."

2. Plaintiffs are residents of Missoula County, Montana and, at all times pertinent hereto, were domiciled in Missoula County, Montana.

3. Upon information and belief, Defendant Detroit Behavioral Institute, LLC ("DBI") is a limited liability company duly formed and existing under the laws of the state of Massachusetts with a principal office located in the state of Tennessee.

4. Upon information and belief, Defendant Acadia Healthcare Company, Inc. ("Acadia") is a corporation duly formed and existing under the laws of the state of Delaware with a principal office located in the state of Tennessee.

5. Upon information and belief, Acadia owns and operates hundreds of inpatient facilities, residential treatment centers, group homes, substance abuse facilities and facilities providing outpatient behavioral care services throughout the United States. Upon information and belief, Acadia owns and operates more than 200 facilities in approximately 40 different states.

6. Upon information and belief, Acadia conducts all, or substantially all, of its business through subsidiary entities. All of Acadia's subsidiary entities are wholly controlled by Acadia through its direct or indirect ownership of a majority interest in each subsidiary and through exclusive rights granted to Acadia as the controlling member of each subsidiary. In fact, Acadia wholly owns the vast majority of its subsidiaries, and substantially all of Acadia's debts and obligations are guaranteed by each subsidiary and secured by liens on substantially all of the assets of each subsidiary. At all times pertinent hereto, Acadia owned and controlled a subsidiary corporation in the state of Montana.

7. Upon information and belief, DBI's sole member is Acadia. At all times pertinent hereto, Acadia wholly owned DBI and exercised exclusive control of DBI's operations.

8. Upon information and belief, at all times pertinent hereto, Acadia— through its subsidiary entity, DBI—owned, operated, and controlled an inpatient psychiatric and/or residential treatment facility in Detroit, Michigan known as

Detroit Behavioral Institute & Capstone Academy (hereinafter referred to as the "Facility").

9. Upon information and belief, Acadia generates, derives, and/or receives most of its revenue from state governments under their respective Medicaid programs.

**JURISDICTION AND VENUE**

10. Plaintiffs reallege and incorporate each of the other allegations of this Complaint as if fully set forth herein.

11. This is an action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Because the parties are of completely diverse citizenship, and because the matter in controversy exceeds the sum of $75,000, this Court has original jurisdiction of this action under 28 U.S.C. § 1332.

12. This action arises out of or results from (1) Acadia's and/or DBI's transaction of business in the state of Montana, (2) Acadia's and/or DBI's commission of an act, or acts, resulting in accrual within Montana of a tort action, and/or (3) a contract entered into by Acadia and/or DBI for services to be rendered or for materials to be furnished in Montana.

13. Defendants have certain minimum contacts with the state of Montana such that maintenance of this suit does not offend traditional notions of fair play and

substantial justice. This Court's exercise of personal jurisdiction over Defendants comports with due process because (1) Defendants engaged in activities whereby they purposely availed themselves of the privilege of conducting activities in the state of Montana, thereby invoking the benefits and protections of Montana's laws; (2) Plaintiffs' claims in this suit arise out of or result from Defendants' Montana-related activities; and (3) this Court's exercise of jurisdiction over Defendants is reasonable.

14. Jurisdiction is proper in this Court.

15. Venue is proper in this Court.

## FACTS COMMON TO ALL COUNTS

16. Plaintiffs reallege and incorporate each of the other allegations of this Complaint as if fully set forth herein.

17. Upon information and belief, on or about May 12, 2017 DBI purposely applied with the state of Montana to become an enrolled Montana Medicaid provider. Enrolled Montana Medicaid providers are able to receive compensation and reimbursement from the state of Montana for services rendered to Montana residents who are eligible to receive medical assistance and benefits under the laws and rules governing Montana's Medicaid program.

18. Upon information and belief, the state of Montana approved DBI's application to become an enrolled Montana Medicaid provider. Consequently, DBI became an enrolled Montana Medicaid provider on or about May 16, 2017.

19. Upon information and belief, as an enrolled Montana Medicaid provider, DBI entered into a contract with the state of Montana whereby DBI agreed to, among other things, comply with all applicable laws, rules and written policies pertaining to the Montana Medicaid program, including but not limited to, the applicable laws set forth in the Montana Code Annotated, the applicable rules set forth in the Administrative Rules of Montana, and the written policies adopted by the Montana Department of Public Health and Human Services.

20. Upon information and belief, at all times pertinent hereto, DBI was publicly advertised and promoted to Montana residents as an enrolled Montana Medicaid provider.

21. When DBI applied for status as an enrolled Montana Medicaid provider, it purposely availed itself of the privilege of conducting activities in Montana and invoked the protection of Montana law by, among other things, placing itself within the statutory and regulatory safeguards established for providers to settle grievances or complaints regarding unpaid Montana Medicaid fees.

22. Upon information and belief on or about May 12, 2017, DBI and Acadia received and derived revenue from the state of Montana for services rendered

6

to Montana residents who were eligible to receive medical assistance and benefits under the Montana Medicaid program.

23.     At all times pertinent hereto, ARB was a severely disabled minor and Montana resident eligible to receive medical assistance and benefits under the Montana Medicaid program.

24.     ARB was referred to the Facility by agents of the state of Montana. On or about October 10, 2019, ARB was voluntarily admitted into the Facility, where she remained under the supervision and residential care of DBI for approximately three months. Upon information and belief, but for DBI's purposeful efforts to derive revenue from the state of Montana as an enrolled Montana Medicaid provider, ARB would not have been admitted into the Facility.

25.     During the course of her stay at the Facility, ARB was subjected to extreme physical and emotional abuse by agents of DBI.

26.     On or about January 9, 2020, Romy and Eric travelled to the Facility in order to visit ARB.

27.     On or about January 10 or 11, 2020, an agent of DBI physically attacked, abused, and injured ARB. Specifically, an agent of DBI improperly restrained ARB, violently slammed and pinned her head against a wall, and then physically dragged ARB down a hallway, all the while keeping ARB physically restrained and her face pinned forcefully to the wall. The DBI agent's extreme abuse

of ARB was done without provocation and without any legitimate purpose. ARB suffered severe physical and emotional harm as a result of the egregious abuse, including, but not limited to, multiple physical injuries to her head and face.

28. Shortly after the incident of extreme abuse that occurred on or about January 10 or 11, 2020, Romy and Eric had a scheduled visit with ARB at the Facility and, during that visit, they observed that ARB had suffered physical injuries. They further observed that ARB was upset and terrified over retaliation if she reported the abuse. Romy and Eric promptly informed representatives of DBI that they (Romy and Eric) would be immediately removing ARB from Defendants' care and bringing her back to Montana. Representatives of DBI refused to let ARB leave, thereby involuntarily confining ARB within the Facility.

29. When Romy and Eric persisted with their pleas and demands to remove ARB, representatives of DBI persisted in their refusal to let ARB leave the Facility. In fact, representatives of DBI baselessly threatened to have Romy, Eric, and ARB criminally prosecuted if ARB left the Facility. Moreover, Romy and Eric were physically prevented from removing ARB from the Facility because ARB was confined behind locked doors and DBI refused to unlock the doors.

30. Terrified for the safety of their daughter, knowing that she had been abused in the Facility, and knowing that she was still in physical danger, Romy and Eric contacted local law enforcement in Detroit and representatives of the Montana

Department of Public Health & Human Services for assistance in getting ARB out of the Facility. ARB was eventually released and allowed to return home to Montana with her parents.

31. As a consequence of Defendants' conduct, ARB suffered and continues to suffer severe pain and suffering, loss of established course of life, emotional distress and mental anguish, including, but not limited to, intimidation, fright, grief, worry, shock, anxiety, and loss of social pleasures and enjoyments.

32. As a consequence of Defendants' conduct, ARB suffered and continues to suffer injuries and damages requiring medical and/or mental health treatment, including, but not limited to, hospital treatment, psychological treatment, psychiatric treatment, counseling, and/or residential care. In addition, as a consequence of Defendants' conduct, ARB will suffer future costs and expenses relating to ongoing and future medical and/or mental health treatment and care. In addition, as a consequence of Defendants' conduct, ARB suffered and continues to suffer an aggravation of pre-existing conditions requiring increased and/or additional medical and mental health treatment, including, but not limited to, hospital treatment, psychological treatment, psychiatric treatment, counseling, and/or residential care.

33. As a consequence of Defendants' conduct, Romy and Eric suffered and continue to suffer severe emotional distress and mental anguish, including, but not

limited to, intimidation, fright, grief, worry, shock, anxiety, and loss of social pleasures and enjoyments.

34. As a consequence of Defendants' conduct, Plaintiffs suffered damages, both general and special, in an amount to be proven at the time of trial. Upon information and belief, the total damages suffered by Plaintiffs as a result of Defendants' conduct greatly exceeds the sum of $75,000, exclusive of interest and costs.

## COUNT I: NEGLIGENCE
### (ARB against Defendants)

35. Plaintiffs reallege and incorporate each of the other allegations of this Complaint as if fully set forth herein.

36. At all times pertinent hereto, Defendants owed ARB the following duties, among others: (1) a duty to exercise ordinary and reasonable care for the safety of ARB and to avoid causing harm or injury to ARB; (2) a duty to refrain from physically and emotionally abusing ARB; (3) a duty to take reasonable precautions to prevent harm and injury to ARB; (4) a duty to adopt, implement, and promote policies, procedures, protocols and/or methods in order to protect and/or ensure the safety and well-being of the Facility's residents; (5) a duty to properly and/or effectively train, instruct, re-train and/or re-instruct Defendants' staff and personnel to follow and comply with said policies, procedures, protocols and/or methods; and (6) a duty to properly and/or effectively supervise, manage, monitor, and/or oversee

staff and personnel in order to protect and/or ensure the safety of the Facility's residents.

37. Defendants breached their duties to ARB by, among other things, (1) failing to exercise ordinary and reasonable care for the safety of ARB and to avoid causing harm or injury to ARB; (2) subjecting ARB to severe physical and emotional abuse; (3) failing to take reasonable precautions to prevent harm and injury to ARB; (4) failing to adopt, implement, and promote policies, procedures, protocols and/or methods in order to protect and/or ensure the safety and well-being of the Facility's residents; (5) failing to properly and/or effectively train, instruct, re-train and/or re-instruct Defendants' staff and personnel to follow and comply with said policies, procedures, protocols and/or methods; and (6) failing to properly and/or effectively supervise, manage, monitor, and/or oversee staff and personnel in order to protect and/or ensure the safety of the Facility's residents.

38. Defendants' negligent acts and omissions caused ARB to suffer physical pain, emotional distress, and mental anguish.

39. As a consequence of Defendants' conduct, ARB suffered and continues to suffer damages, both general and special, in an amount to be proven at the time of trial.

////

////

## COUNT II: INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
**(Plaintiffs against Defendants)**

40.     Plaintiffs reallege and incorporate each of the other allegations of this Complaint as if fully set forth herein.

41.     ARB suffered serious and severe emotional distress and mental anguish as a consequence of Defendants' negligent and/or intentional conduct.

42.     Romy and Eric suffered serious and severe emotional distress and mental anguish as a consequence of Defendants' negligent and/or intentional conduct.

43.     In addition, Romy and Eric, as the parents of ARB, suffered serious and severe emotional distress, mental anguish, shock, and mental disturbance when they were present at the Facility during a time period in which ARB was being physically abused, falsely imprisonment, and tortiously injured by Defendants.

44.     The serious and severe emotional distress, mental anguish, shock, and mental disturbance suffered by Plaintiffs were the reasonably foreseeable consequences of Defendants' negligent and/or intentional acts or omissions.

45.     As a consequence of Defendants' conduct, Plaintiffs suffered and continue to suffer serious and severe emotional distress and mental anguish, including, but not limited to, intimidation, fright, grief, worry, shock, anxiety, and loss of social pleasures and enjoyments.

46.     As a consequence of Defendants' conduct, Plaintiffs suffered and continue to suffer damages, both general and special, in an amount to be proven at the time of trial.

### COUNT III: NEGLIGENT HIRING, TRAINING, SUPERVISION, INVESTIGATION AND/OR RETENTION
### (ARB against Defendants)

47.     Plaintiffs reallege and incorporate each of the other allegations of this Complaint as if fully set forth herein.

48.     Defendants owed ARB a non-discretionary and non-delegable duty to implement and train its employees to follow appropriate policies, procedures, protocols and/or methods in order to protect and/or ensure the safety and well-being of the Facility's residents at all times.

49.     Defendants owed ARB a non-discretionary and non-delegable duty to supervise its employees to ensure a residential environment that is free from physical and emotional abuse.

50.     Defendants owed ARB a non-discretionary and non-delegable duty to investigate claims and reports of abuse and/or mistreatment of the Facility's residents.

51.     Defendants owed ARB a non-discretionary and non-delegable duty to take prompt and immediate steps and/or corrective action in response to reports and/or complaints of abuse and/or mistreatment of the Facility's residents.

52.     Defendants owed ARB a non-discretionary and non-delegable duty to take prompt and/or effective steps or measures to discipline, up to and including termination, employees who are found to have abused and/or mistreated the Facility's residents.

53.     Defendants breached their duties to ARB by (a) failing to implement and train its employees to follow appropriate policies, procedures, protocols and/or methods in order to protect and/or ensure the safety and well-being of the Facility's residents at all times; (b) failing to supervise its employees to ensure a residential environment that is free from physical and emotional abuse; (c) failing to investigate claims and reports of abuse and/or mistreatment of the Facility's residents; (d) failing to take prompt and immediate steps and/or corrective action in response to reports and/or complaints of abuse and/or mistreatment of the Facility's residents; and (e) failing to take prompt and/or effective steps or measures to discipline, up to and including termination, employees who are found to have abused and/or mistreated the Facility's residents.

54.     As a consequence of Defendants' conduct, ARB suffered and continues to suffer damages, both general and special, in an amount to be proven at the time of trial.

////

////

## COUNT IV: FALSE IMPRISONMENT
### (ARB against Defendants)

55. Plaintiffs reallege and incorporate each of the other allegations of this Complaint as if fully set forth herein.

56. Defendants knowingly and/or intentionally engaged in affirmative conduct designed to confine and/or imprison ARB within a limited area.

57. Defendants' conduct caused ARB to be confined and/or imprisoned within a limited area.

58. ARB was aware that she was confined and/or imprisoned within a limited area.

59. ARB did not consent to the confinement and/or imprisonment.

60. At all times pertinent hereto, Defendants owed ARB a duty to release her from the confinement and/or imprisonment.

61. Defendants breached their duty to ARB by failing to release her from the confinement and/or imprisonment.

62. ARB suffered injuries and damages as a result of being wrongfully, involuntarily, and falsely confined and/or imprisoned by Defendants.

63. As a consequence of Defendants' conduct, ARB suffered and continues to suffer damages, both general and special, in an amount to be proven at the time of trial.

////

## COUNT V: RESPONDEAT SUPERIOR
### (Plaintiffs against Defendants)

64. Plaintiffs reallege and incorporate each of the other allegations of this Complaint as if fully set forth herein.

65. Defendants' employees, servants, and/or agents engaged in wrongful and tortious conduct that caused Plaintiffs to suffer injuries and damages.

66. At all times pertinent hereto, Defendants' employees, servants, and/or agents were acting within the normal course and scope of their employment and within the normal course and scope of their job duties owed to Defendants.

67. As an employer, master, and/or principal, Defendants are responsible for all of the wrongful and tortious acts and omissions alleged in this Complaint, including, but not limited to, the wrongful and tortious acts and omissions of their employees, servants, and/or agents.

## COUNT VI: NEGLIGENCE PER SE
### (ARB against Defendants)

68. Plaintiffs reallege and incorporate each of the other allegations of this Complaint as if fully set forth herein.

69. Defendants violated 42 C.F.R. § 483.10 (Resident Rights), 42 C.F.R. § 483.12 (Freedom from Abuse, Neglect, and Exploitation), and 42 C.F.R. § 485.910 (Condition of Participation: Client Rights) (the "CFR's") by, among other things, (1) failing to avoid causing harm or injury to ARB; (2) subjecting ARB to severe

16

physical and emotional abuse; (3) subjecting ARB to unnecessary physical restraint and seclusion; (4) failing to ensure ARB was treated with respect and dignity; (5) failing to adopt, implement, and promote policies, procedures, protocols and/or methods in order to protect and/or ensure the safety and well-being of the Facility's residents; (6) failing to properly and/or effectively train, instruct, re-train and/or re-instruct Defendants' staff and personnel to follow and comply with said policies, procedures, protocols and/or methods; and (7) failing to properly and/or effectively supervise, manage, monitor, and/or oversee staff and personnel in order to protect and/or ensure the safety of the Facility's residents.

70. Defendants operate a long-term care facility that receives funds from the Medicare and Medicaid systems, and ARB was Defendants' patient. As such, Defendants are members of the class of persons which the aforementioned regulations were enacted to regulate, and ARB is a member of the class of persons the aforementioned regulations were designed to protect.

71. The aforementioned regulations were enacted to protect patients of long-term care facilities that receive funds from the Medicare and Medicaid systems. The aforementioned regulations were designed to prevent the abuse of patients of long-term care facilities. As such, ARB's injuries are the type of injuries the aforementioned regulations were designed to prevent.

72. The aforementioned regulations were intended and designed to regulate employees and facilities such as those in Defendants' class.

73. As a consequence of Defendants' conduct, ARB suffered and continues to suffer damages, both general and special, in an amount to be proven at the time of trial.

## COUNT VII: PUNITIVE AND/OR EXEMPLARY DAMAGES
**(Plaintiffs against Defendants)**

74. Plaintiffs reallege and incorporate each of the other allegations of this Complaint as if fully set forth herein.

75. Defendants engaged in malicious, willful, and/or wanton conduct and, as a result of said conduct, Plaintiffs suffered and continue to suffer increased damages and injuries, including, but not limited to, emotional distress, mental anguish, fright, grief, worry, humiliation, outrage, and/or indignity

76. Defendants had knowledge of facts or intentionally disregards facts that created a high probability of injury to the Plaintiffs .

77. Specifically, Defendants knew of numerous other prior violations at DBI and other Acadia facilities related to the abuse of residents.

78. Defendants were cautioned that the termination of employees engaging in abuse was insufficient to treat the systemic problem of abuse.

79. Despite their collective knowledge, Defendants continued to deliberately proceed to act in conscious or intentional disregard of the high

probability of injury to Plaintiffs and/or deliberately proceeded to act with indifference to the high probability of injury to Plaintiffs.

80. As a consequence of Defendants' conduct, Plaintiffs are entitled to an award of exemplary and/or punitive damages as allowed by law.

WHEREFORE, Plaintiffs respectfully pray for the following relief:

1. For judgment against Defendants and in favor of Plaintiffs on all claims alleged in this Complaint;

2. For an award of general and special damages as allowed by law, including, but not limited to, damages for pain and suffering, loss of established course of life, emotional distress, and past and future expenses, including, but not limited to, past and future expenses for medical and/or mental health treatment and care;

3. For an award of punitive and/or exemplary damages as allowed by law;

4. For an award of pre- and post-judgment interest as allowed by law;

5. For an award of any and all other appropriate relief necessary to make Plaintiffs whole and compensate them for the violations of law described herein;

6. For an award of costs as allowed by law;

7. For an award of reasonable attorneys' fees as allowed by law; and

8. For such other relief as the Court deems just and proper.

## **JURY DEMAND**

COME NOW, Plaintiffs Romy Bentle and Eric Bentle, individually and as parents and guardians of A.R.B., by and through their counsel of record, and hereby demand a jury trial on all issues so triable.

DATED this 9th day of April, 2021.

CHRISTIAN, SAMSON & BASKETT, PLLC


By:  */s/ Eric R. Henkel*
Eric R. Henkel
*Attorney for Plaintiffs*

KNIGHT NICASTRO MACKAY, LLC


By:  */s/ Dylan M. McFarland*
Dylan M. McFarland
*Attorney for Plaintiffs*